UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 10-339-GWU


DOROTHY SUE BROOKS,                                          PLAINTIFF,


VS.                            **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative decision of the Department of Health and Human Services, pursuant to the provisions of the Social Security Act; at issue is the denial of her application for Disabled Widow's Insurance Benefits (DWIB) and Supplemental Security Income (SSI).  The case is currently before the Court on defendant's motion for summary judgment; the plaintiff has filed a motion for summary judgment or to remand the case.

## APPLICABLE LAW

The plaintiff filed  two types of benefit claims, as has been noted above. With respect to the plaintiff's widow's insurance benefits, the medical evidence relating to such claims filed on or after January 1, 1991, or applications pending on or after that date, are to be evaluated under the same standards as are applied to other Title II disability claims.  Omnibus Budget Reconciliation Act (OBRA) of 1990,

Pub. L. No. 101-508, Section 5103.  Accordingly, a review of the principles applicable to judicial review of these other claims is necessary.[1]

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities?  If not, a finding of non-disability is made and the claim is denied.

3.    The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.    At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.    If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

_____

[1]Other requirements for Widow's benefits were not at issue in the present case.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

In step three, as previously noted, the issue is whether the plaintiff has a "severe impairment."  This term is defined by the regulation to mean an impairment

which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521. In the Sixth Circuit, the Step Three severity regulation has been held to be a <u>de</u> <u>minimis</u> hurdle in the disability determination process. <u>Murphy v. Secretary of Health and Human Services</u>, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." <u>Farris v. Secretary of Health and Human Services</u>, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." <u>Id</u>., n.1.

## DISCUSSION

The plaintiff, Dorothy Sue Brooks, was found by an Administrative Law Judge (ALJ) to have medically determinable impairments due to chronic obstructive pulmonary disease (COPD) and hypertension. (Tr. 10). However, he found that these conditions did not significantly limit her ability to perform basic work activities, and were not "severe," thus stopping the sequential evaluation at Step Two. (Tr. 11). The Appeals Council declined to review, and this action followed.

Mrs. Brooks filed her applications on July 7, 2008, alleging disability due to knee problems, high blood pressure, and "pain in body," with an alleged onset date of March 30, 2005. (Tr. 142). Her last date of eligibility for DWIB is July 31, 2005, or seven years after the date of her husband's death. 20 C.F.R. § 404.335(c)(1).

4

She cannot be eligible for SSI before the date of her application.  Thus, there are two time periods involved.  However, the court concludes that Mrs. Brooks did not show a "severe" impairment at any time, contrary to her arguments.

Mrs. Brooks received most of her treatment from Dr. Jose Echeverria, who submitted office notes concerning physical checkups dating back to 2002.  (Tr. 225).  Importantly, he wrote a letter dated October 20, 2008, stating that his patient had osteoarthritis producing severe thoracic and lower back pain, chronic obstructive pulmonary disease, hypertension, high cholesterol, menopause, and allergic rhinitis.  (Tr. 255).  He noted that she had taken care of her mother for years, which had resulted in an exacerbation of her arthritis and "constant" upper and lower back pain.  (Id.).  The physician opined that the plaintiff was unable to work "at this time" and would not be able to work in the "near future."  (Id.).

The only other opinion from a medical source was given by non-examining state agency physician David Swan, who reviewed the evidence on September 23, 2008 and found no evidence of a "severe" impairment.  (Tr. 254).

The ALJ correctly noted that despite the plaintiff's allegations of totally disabling pain over her entire body, Dr. Echeverria's office notes were "benign" during the course of eight office visits between 2005 and 2008.  (Tr. 12).  He found the physician's opinion "unsupported by medical evidence" and "reserved to the Commissioner" and assigned it "no weight."  (Id.).  He found Dr. Swan's opinion and rationale persuasive.   He additionally noted the plaintiff's testimony at the

administrative hearing that she had not stopped work for medical reasons and the absence of pain medication or mental health treatment.[2]

The plaintiff concedes that Dr. Echeverria's conclusory disability opinion was not controlling, but maintains that the ALJ improperly explained his rationale for totally rejecting the opinion.  She maintains that the error is not harmless because the Commissioner's regulations would provide that a person of the plaintiff's age of 61 at the time of the decision, with no recent or relevant work experience, would in effect be found disabled if she had a "severe" impairment, citing 20 C.F.R. § 404.1564(b) and Social Security Ruling 82-63.

The court believes, however, that the ALJ's rationale was adequately explained.  It would be difficult to reconcile Dr. Echeverria's opinion with multiple office notes in which the plaintiff was reported as "feeling fine," had no spinal tenderness to palpation, and had a non-focal neurological examination.  (E.g., Tr. 188-89, 191, 193, 198, 201, 207).  The office note of December 8, 2008, just two months after Dr. Echeverria offered his opinion, reports that Mrs. Brooks was "overall doing fine," and despite diagnoses of osteoarthritis and osteoporosis, there

---

[2]The plaintiff testified that she stopped working because she was not allowed to work and collect Veterans' Administration benefits for her late husband at the same time, and that she had also needed to take care of her mother.  She was having trouble with the lifting required in her job tending a salad bar, but if it had not been for the other two factors she "probably" would have been able to continue the job.  (Tr. 22).  She last worked in 1997, and did not think she could have performed the job in 2005 or at the time of the hearing in 2009.  (Tr. 22-3, 30).

was "[n]o tenderness on palpation of C-spine, T-spine and LS spine."  (Tr. 280-81).

Dr. Echeverria issued several prescriptions over the years, but appears never to

have given any pain medication or samples.  The plaintiff testified that she only took

over the counter Tylenol two or three times a day.  (Tr. 24).  The most recent

available office note, from June 9, 2009, noted that Mrs. Brooks was "complaining

of back pain" but it was "under good control with medications prescribed."  (Tr. 305).

He again found no tenderness to palpation of the spine and no sensory or motor

deficits.  (Tr. 305-6).  It does not appear from this note that any pain medication was

prescribed, however.  (Tr. 306).

Without going into as much detail, the ALJ correctly summarized the above

evidence in explaining why he gave Dr. Echeverria's disability opinion "no weight."

(Tr. 12).  He did note the physician's opinion that the plaintiff's pain was "severe."

(Id.).  His opinion was not ignored, as the plaintiff suggests.  Nor was it necessary

for the ALJ to go into an elaboration of what weight the opinion was given, because

he clearly found it was entitled to no weight at all.  Cf. Blakley v. Commissioner of

Social Security, 581 F.3d 399, 406 (6th Cir. 2009).  In Blakley, as here, the opinion

of non-reviewing physicians was given greater weight than the treating source

opinion, but the Sixth Circuit held that such a course was "not, by itself, reversible

error."  Id. at 409.  The court instead found fault with the ALJ's lack of explanation

for rejecting the treating source opinion, a factor not present here.  The unpublished

case of Friend v. Commissioner of Social Security, 375 Fed. Appx. 543 (6th Cir.

2010), cited by the plaintiff, is not to the contrary.  In fact, it is very similar in that it found the ALJ's explanation was not sufficiently specific, and was not so "patently deficient" that the error was harmless.  This court believes that, even if the ALJ's explanation had been inadequate, which it was not, Dr. Echeverria's opinion would have been so patently deficient that the Commissioner could not possibly have credited it.  Wilson v. Commissioner of Social Security, 378 F.3d 541, 547 (6th Cir. 2004).

The decision will be affirmed.

This the 10th day of November, 2011.

Signed By:

G. Wix Unthank

United States Senior Judge